SARAH WATERS ET AL. *vs.* JOHN B. WRIGHT ET AL. EXECUTORS.

*Construction of a Will Directing Loans to Be Deducted From the Shares of Legatees.*

A testatrix bequeathed one-fourth of her estate to the children of her deceased nephew, J. E., and the rest of her estate she gave to other nephews and nieces.   By another clause of the will testatrix provided : "Whereas it is my intention that all my beneficiaries hereunder shall be placed upon an equal footing in the distribution of my property to them as hereby provided, and whereas some of them have already received at my hands sundry sums of money advanced to them by me in my lifetime, which said sums are respectively charged up to them on my books of account   *   *   I do now hereby expressly direct that all such sums of money so charged to them respectively shall,   *   *   be deducted from the respective shares bequeathed to them."  The nephew, J. E., died nearly ten years before the will was executed.   In a ledger kept by a bookkeeper of the testatrix, a sum of money was charged against J. E. amounting to about $9,000.   On the same page, under that balance, twenty-two items were charged, in some other person's handwriting, against J. E.'s children with a reference to the day books,

which books showed the payment of these twenty-two sums of money to J. E.'s children. These entries were not in the handwriting of the testatrix and it was not shown when or by whom they were made. By far the larger part of the $9,000 charged against J. E. consisted of interest of loans made to him many years before the will was executed. *Held*, that the language of the will by itself does not indicate any intention on the part of the testatrix that the sum charged against J. E., who was not a legatee, should be deducted from the shares of his children who are legatees, and since there is no evidence to show that the entries in the ledger were made by the direction of the testatrix, or that she intended that the debt due her by J. E. should be added to the sums due by her children, the amount charged against J. E. should not be deducted from the share of his children.

Appeal from a decree of the Circuit Court for Allegany County (BOYD, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*John G. Wilson* and *F. V. Rhodes* (with whom was *C. C. Rhodes* on the brief), for the appellants.

*Benjamin A. Richmond* and *Clayton Purnell,* for the appellees

McSHERRY, C. J., delivered the opinion of the Court.

This case does not so directly involve the interpretation of the terms used in a last will and testament as it concerns the proper application of those terms to extrinsic facts. The language employed in the will now before us is perfectly clear and intelligible, but the difficulty which is presented arises only when circumstances outside of the will are considered and when an effort is made to apply that language to those circumstances. The facts which give rise to the pending controversy are these: In November, eighteen hundred and ninety-seven, Sarah Wright made her last will and testament. She died in nineteen hundred. She was an elderly maiden lady. She had no nearer kindred than nephews and nieces and the children of a deceased nephew. The scheme of her will contemplated the conversion of her whole estate into money and the division of that fund into four equal parts. One

of those parts she gave by the third clause of her will to the children of her deceased nephew, Dr. James J. W. Engler. The other three-fourths she gave in shares of one-fourth to other nephews and nieces. By the fifth clause of the will she declared : "And whereas it is my intention that all my beneficiaries hereunder, shall be placed upon an equal footing in the distribution of my property to them as hereby provided, and whereas some of them have already received at my hands sundry sums of money advanced to them by me in my lifetime, which said sums are respectively charged up to them on my books of account and in some cases evidenced by their promissory notes given for such advancements at the time they were made. I do now hereby expressly direct that all such sums of money so charged to them respectively shall, in the distribution of my estate by my executors, be deducted from the respective shares bequeathed to them respectively in this my last will and testament."

If there were nothing else in the record there could be no rational doubt that the purpose and intention of the testatrix was, by the fifth clause, to charge each of the named beneficiaries with whatever sum *that beneficiary* had received from her during her life, provided the sum thus received were charged against *that* beneficiary on her books of account. She declared that it was her intention "that all my beneficiaries hereunder," that is to say, that all the persons to whom she gave legacies and not other persons to whom she might have advanced money but did not name as legatees, "shall be placed upon an equal footing in the distribution of my property to *them*." The equality she contemplated was an equality amongst the legatees as her language plainly indicates. She then went on to recite that *"some of them,"* that is, some of the *named* beneficiaries, "have already received at my hands sundry sums of money advanced to *them,*" that is, to the named beneficiaries, "by me in my lifetime, which said sums," that is, the sums so advanced to the named beneficiaries, "are charged to *them.*" She then directs that "all such sums of money so charged to *them,*" that is, all such sums as were re-

ceived by the *named* beneficiaries and as were charged to *them*, "shall be deducted from the respective shares bequeathed to *them*." The obvious and plain reading of this clause, uninfluenced and unaided by extrinsic circumstances, is, that as the testatrix was anxious to deal equally with her beneficiaries, and as she had given to some of them certain sums of money during her life which she had charged them with on her books of account, she wished the sum advanced to each beneficiary and charged against *that* beneficiary to be deducted from the share of *such* beneficiary. Manifestly, the language used by the testatrix, standing alone, would not warrant the deducting from the share bequeathed to any of the beneficiaries, of any sum advanced to some other person and charged on the books of the testatrix to that other and different person. The scheme of the clause looks exclusively to the pecuniary relation of the *named* beneficiaries to the estate, and not to the pecuniary relation of other persons to the estate, and the declared design was to equalize those beneficiaries. The method by which that equality was to be effected, prescribed that such of the beneficiaries as had received money from the testatrix and had been charged on her books therefor, should have their shares diminished by the amount thus, as she styles it, *advanced* to them. Giving effect to this obvious purpose and without looking beyond the four corners of the will, there would necessarily be excluded from the sums chargeable against any beneficiary an advancement made to some one other than the beneficiary himself. It is perfectly true that the testatrix had an undoubted right to dispose of her property as she saw fit. She could have given it all to strangers, or she could have given it in unequal shares, instead of in equal shares, to the same persons she selected as legatees. Indeed, she might have charged against the children of Dr. Engler whatever sum she had given to their father in his lifetime, and thus have diminished the share of those children under the third clause ; and she might have done this even though she had, during her lifetime, given nothing to those children. Now, in terms she has not done

any such thing, but upon turning to her books of account to ascertain what sums are charged against the legatees the difficulty which the case presents is encountered. And that difficulty will now be stated and disposed of.

In Ledger C, one of the books of account which were kept by a bookkeeper and not by the testatrix herself, there will be found an account against Dr. Jas. J. W. Engler, the father of the legatees named, or rather described, in the third clause of the will. Dr. Engler died in May, eighteen hundred and eighty-eight, or nearly ten years before the will was made. After his death the account was credited with the amount of the proceeds of the sale of some property that had belonged to him, and the balance to square the account having been ascertained and carried to the credit side, the account was closed. This same balance was then brought over to the debit side of the ledger and appears as the amount due by Dr. Engler. That balance is charged to *him* as of October, 1888, though sundry credits show that it could not have been struck prior to October, 1889. The amount of that balance is $9,451.02, and stands upon the ledger charged to *Dr. James W. J. Engler.* Thus far there is no difficulty. If we were to stop here it could not be pretended that this balance due by Dr. Engler and actually charged to him, is by the terms of the will, to be deducted from the shares of his children. That Miss Wright *could* have charged them with it does not admit of a momentary doubt. But she did not in express words do so. Dr. Engler was not named as a beneficiary. He had been dead nearly ten years when the will was executed, and as the testatrix made reference only to the sums advanced to "the beneficiaries hereunder," that is, to the beneficiaries named in the will, the sum due by *him* to her, was not a sum advanced to any of the beneficiaries, and consequently could not, under the terms of the fifth clause, have been deducted from the shares of any of them. But on the same page of the ledger which contains the balance of $9,451.02 due by Dr. Engler, and immediately under that balance there have been posted from the day books of the testatrix, twenty-two entries begin-

ning with November, 1893, and ending with February, 1900. These twenty-two entries on the ledger are all in a different hand-writing from that in which the balance due by Dr. Engler is written ; and none of those twenty-two entries is shown to be in the hand-writing of the testatrix, or is shown to have been written where they now appear, by her direction or with her knowledge. The entries consist simply of dates and two sets of figures. One set of figures refers to the pages of the day books and the other gives the amounts of the charges. Those items though thus transcribed into the ledger under the balance due by Dr. Engler have not been added to that balance ; and there is nothing in the record to indicate that they were ever intended to constitute a part of the account against Dr. Engler, or that the balance due by Dr. Engler was designed to be added to those twenty-two items so as to incorporate it with them, save and except the single unexplained circumstances that *some one*, but *who* it was does not appear, transcribed those items from the day books and entered them in that particular place in the ledger. Upon turning to the day books at the several pages referred to in the ledger entries, nineteen of the twenty-two items will be found to be charges against Dr. Engler " heirs " or Dr. Engler " children "; two are charges against Dr. Engler long after his death, and one is a charge of sixty dollars against C. M. Engler, a son of Dr. Engler, and now dead, having died after the decease of the testatrix. Do these facts incorporate the $9,451.02 balance, confessedly due by Dr. Engler individually, in, and make that sum form a part of, the aggregate properly chargeable, under the fifth clause, against the legacy given to Dr. Engler's children ? That is the whole question in the case.

The testatrix had the right, as we have said, to charge Dr. Engler's children with the $9,451.02 due by their father if she had seen fit to do so. Has she manifested any intention to charge them therewith ? The words she employed in the will evince no such intention as we have already pointed out ; and before the entry of the twenty-two items, properly charge-

able against the children under the balance, properly charge-
able against the father, can justify an inference that she in-
tended thereby to consolidate both into one account against
the children, there must be some evidence of some sort to
show that the items were, by her direction, posted where we
find them, or at least that she *knew* they were posted where
they are.    And there is not the slightest suggestion that she
gave such a direction or that she possessed such knowledge.
There is absolutely nothing but the physical situation of the
ledger entries—the naked fact that some one, not the testatrix,
transcribed those twenty-two items from the day book's into
the ledger and there entered them under the balance standing
open against Dr. Engler—to sustain the claim of the executors
that that balance thus standing against Dr. Engler was intended
to be added to and included in "the sundry sums of money"
received by the beneficiaries named in the will, at the hands
of the testatrix in her lifetime.    Can that single circumstance
—in itself when unexplained devoid of all significance—be
treated as indicative of an intention on the part of the testatrix
to make that balance a part of the sum due to her by the chil-
dren of the man who owed that balance ?    We think not, and
our conclusion is strengthened when the items which make up
that balance of $9,451.02 are considered.

The account against Dr. Engler extended over a number
of years.    Balances were repeatedly struck.    The preceding
balance brought over in January, 1886, was $13,681.95, and
it included sundry charges of interest up to January the first,
1885.    Those interest charges aggregated $7,002.22.    In the
account which was closed in August, 1878, by bringing down
a balance of $1,256.69 to a new account there was also in-
cluded sundry items of interest amounting altogether to·
$973.21.    Now, all of these charges of interest, which foot up
a total of $7,975.43, ultimately found their way into the account
which was closed after Dr. Engler died, and they constitute
by far the larger part of the $9,451.02 due by him to the
testatrix.    In other words, of the $9,451.02 standing charged
against Dr. Engler the sum of $7,975.43 was *interest* on loans

made to him many years before the will was executed ; and the sum thus charged for interest does not in any sense represent "sundry sums of money advanced" either to Dr. Engler or to his children.    So, in fact, the account disclosed by the books of the testatrix is not an account of sundry sums of money already *received* by the children of Dr. Engler at the hands of the testatrix ; but, in so far forth as the interest charges are concerned, it is an account which contains no advances at all.    It cannot, therefore, be assumed that the testatrix when she spoke of having advanced *sums of money* to the beneficiaries named or described in the will, meant to include interest charges debited against the father of some of those beneficiaries.    This view does not seem to have been presented to the learned and very careful Judge who decided the case below ; and it is altogether likely that he would have reached a conclusion different from the one he announced had this matter of interest charges been called to his attention.

In view of the language used in the fifth clause of the will; in view of the fact that there is no evidence whatever, apart from the unexplained ledger entries, that the testatrix intended to add the debt due by Dr. Engler to the sums advanced his children ; and in view of the very pregnant circumstance that by far the larger proportion of the debt due by Dr. Engler was for interest accrued many years ago and not for money received by him at all, we are constrained to hold that the sum of nine thousand four hundred and fifty-one dollars and two cents with which the decree appealed against charges the children of Dr. Engler, is not a proper charge against them ; and therefore that decree must be reversed with costs, the costs to be paid out of the estate.

> *Decree reversed with costs ; the costs to*
> *be paid out of the estate of Sarah*
> *Wright, and cause remanded.*

(Decided January 16th, 1902.)